IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| PAUL STOTLER, JR., | 4:11-cv-00036-HDV -CFB |
| Plaintiff, | |
| v. | **DELAVAN INC.'s STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| DELAVAN, INC., | |
| Defendant | |

COMES NOW the Defendant, Delavan, Inc. ("Delavan"), by and through the undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.a.1 and submits its Statement of Undisputed Facts in Support of Motion for Summary Judgment.

1.      Paul Stotler ("Mr. Stotler") began working at Delavan as a temporary worker in September 2005. (App. p. 36)

2.      Mr. Stotler was hired as a full time Delavan employee on December 12, 2005. (App. p. 36)

3.      Delavan manufactures parts for jet engine fuel systems. (App. p. 38).

4.      Mr. Stotler was a Braze Technician, which is also known as a thermal technician, and worked in the Inferno Department.  (App. p. 37).

5.      Mr. Stotler's daily job duties generally included: assembling, brazing and heat treating parts; inspecting products to ensure they met the required specifications; loading and unloading assemblies into heat treating furnaces and cooling equipment; and delivering finished parts to other locations in the plant.  (App. p. 1).

6.      Mr. Stotler and one other person on the shift were responsible for operating ten machines, including 3 A bar ovens, 4 TM ovens, 2 draw furnaces, and 1 deep freezer in an area that was approximately 30 feet by 30 feet.  (App. pp. 41-42).

7.      Mr. Stotler's job required him, each day, to stand occasionally, from 30 minutes to two hours and 30 minutes; to walk frequently, from two hours and 30 minutes to five hours and 30 minutes; and to be mobile continuously, from five hours and 30 minutes to eight hours. (App. pp. 3-4).

8.      Mr. Stotler was required to braze and heat treat parts in an A bar oven which is roughly 3 to 4 feet in diameter and approximately 5 to 6 feet deep.  (App. pp. 44-45).

9.      Mr. Stotler utilized a floor jack to place parts in the A bar oven.  (App. p.  40). When fully loaded, the floor jack could hold 40-50 pounds.  The parts and the jack must be pushed and pulled about 3-4 feet when loading the oven.  (App. pp. 54-55).  There are two handles on the floor jack that are utilized for pushing the jack into and out of the oven.  (App. p. 54).

10.     After parts were treated, Mr. Stotler was required to remove baskets full of parts from inside the machine and transport them to a different location in his department, which could be as far as 25 feet away.  This task required either carrying baskets that weighed between less than a pound and forty pounds to the next location or loading the baskets onto a cart and pushing it to the next location.  (App. pp. 43-53).

11.     Finished parts were generally moved from the Inferno Department to other departments at the end of each day.  On some occasions, it was necessary to move parts more than once per shift.  (App. pp. 56-57).

12.     When the machines with which Mr. Stotler worked malfunction, alarms sound and a braze tech must respond to these alarms.  On a given night, a braze tech responds to 10 - 20 alarms.  Prompt attention to the machine sending the alarm is required.  If problems are not addressed quickly, parts may be ruined and have to be redone, resulting in extra cost and delay in filling customer orders.  (App. pp. 57-59; 91).

13.     In January 2009, Mr. Stotler consulted Dr. David Vittetoe, regarding problems with his hips and was diagnosed with hip pain secondary to osteonecrosis and avascular necrosis involving both of his femoral heads.  (App. pp. 6-11; 61-62).

14.     Mr. Stotler had right hip replacement surgery on March 4, 2009 at Iowa Methodist Medical Center.  (App. pp. 6-11).

15.      Mr. Stotler utilized a walker to ambulate from March 4, 2009 until mid-April.  Mr. Stotler used crutches to ambulate from mid-April until the end of June or early July.  Mr. Stotler graduated to ambulating with a cane in early July, 2009 and continued to use a cane for three to four months.  (App. pp. 67-68).

16.     Delavan's Short Term Disability plan ("STD") and Family Medical Leave Act leave ("FMLA") are administered by a third party vendor, The Reed Group.  (App. p. 90).

17.     Mr. Stotler applied and was initially approved for STD and FMLA from March 4, 2009 until April 5, 2009.  (App. pp. 12; 13; 64-66).

18.     On or about April 9, 2009, Mr. Stotler's STD and FMLA were extended until April 19, 2009.  (App. pp. 14; 69).

19.     On or about April 17, 2009, Mr. Stotler was informed that his STD was extended until May 31, 2009.  He was also advised that he would receive a separate letter regarding when his FMLA would be exhausted.  (App. pp. 15; 70).

20.     On May 12, 2009 Dr. Vittetoe conducted a work capacity evaluation of Mr. Stotler and opined that he was unable to return to work.  (App. pp. 16; 71).

21.     Three days later, on May 15, 2009, Mr. Stotler received a letter from the Reed Group, stating that his FMLA leave would exhaust on May 22, 2009.  (App. pp. 17; 60; 72).

22.     Mr. Stotler visited Dr. Vittetoe on May 19, 2009 and requested that the doctor relax his work restrictions, even though Mr. Stotler was still in the same condition as he had been on May 12 when the Work Capacity Evaluation was conducted.  (App. pp. 18; 73).

23.     On Tuesday, May 19, 2009, Dr. Vittetoe provided Mr. Stotler revised work restrictions for the time period May 26, 2009 until June 25, 2009.  These restrictions stated he was unable to stand or walk longer than one hour continuously, and he needed to either sit or stand for 10 minutes every hour, no lifting over 20 pounds, no squatting, kneeling, climbing stairs or ladders, and able to use a walking device as necessary for ambulation.  (App. p. 18).

24.     Mr. Stotler was utilizing crutches for ambulation in May 2009.  (App. p. 76).

25.     Mr. Stotler's FMLA leave was exhausted on May 22, 2009.  (App. pp. 17; 60; 72).

26.     Mr. Stotler delivered his revised restrictions to Stacy Johnson, Human Resources Generalist for Delavan, before Memorial Day, May 25, 2009.  Mr. Stotler asked to return to work Tuesday, May 26, 2009.  (App. pp. 74-75; 90).

27.     Stacy Johnson advised Mr. Stotler that she had to speak with Nik Chandler, Mr. Stotler's supervisor, and Scott Freeman, Mr. Chandler's supervisor, to determine whether Delavan could provide work within Mr. Stotler's restrictions.  (App. pp. 76; 91).

28.      Delavan was unable to provide work within Mr. Stotler's restrictions due to his use of crutches for ambulation.  (App. pp. 77; 92).

4

29.     Delavan does not allow employees on crutches to be on the manufacturing floor for safety reasons, including concerns about possible falls due to slippery floor conditions caused both by the nature of the floor surface, and occasional liquids that spill onto the floor during the manufacturing process.  (App. p. 91).

30.     As a braze technician, Stotler was responsible for performing numerous duties that required the use of two hands and stability, both of which would be compromised while using crutches, including lifting baskets of parts and pushing a large floor jack, containing baskets full of often heavy parts into a large furnace to be treated.  (App. p. 91).

31.     Stotler's position as a braze technician required frequent mobility; he was required to transport parts around the Inferno cell and also from the Inferno cell to other cells. The position also required quick response to machine alarms, by physically going to the machine to troubleshoot the issue.  (App. pp. 1-5; 91).

32.     In 2007, when he was working as a braze tech, Mr. Stotler's supervisor, Nik Chandler, was not allowed to work in the Inferno Department when he was on crutches due to an injury. (App. p. 91).

33.     Because he was unable to return to work on May 26, 2009, Mr. Stotler's STD benefits were extended through June 25, 2009.  (App. p. 19).

34.     On May 26, 2009, Mr. Stotler received a letter from Delavan stating that his FMLA leave had exhausted and he was no longer entitled to job protection provided by the FMLA.  (App. pp. 20; 78-79).

35.     Mr. Stotler understood that since his FMLA leave was exhausted, he could return to work at Delavan once work could be provided within his medical restrictions, only if there was an open position available. (App. p. 80).

36.     On July 2, 2009, Mr. Stotler's STD was extended until July 23, 2009, after Mr. Stotler submitted updated restrictions and Delavan was still unable to provide work within his medical restrictions.  (App. pp. 21; 81-82).

37.     During the period that Mr. Stotler was on leave, Delavan experienced a decline in work due to economic conditions.  Rather than lay off workers, Delavan cross-trained employees to perform multiple jobs and did not fill jobs as they were vacated.  (App. p. 92).

38.     During 2009, ten positions were not filled by Delavan when the positions were vacated due to employee's resignations or terminations (8) and inability to return to work following loss of job protection (2). (App. p. 92).

39.     During 2009, only one person was hired after Stotler went on leave in February 2009.  He was hired for an administrative rather than a manufacturing job.  (App. p. 92).

40.     Additionally, employees were encouraged to take "Code 12" hours, which allowed employees to take time off without pay due to lack of work.  (App. p. 92).

41.     Between March 2009 and December 2009, West Des Moines Delavan employees took 1,341.85 Code 12 hours due to lack of work.   (App. p. 92).

42.     The non-exempt employee headcount at Delavan was 261 in January 2009, 243 in January 2010, 238 in January 2011 and 225 in October of 2011.  (App. p. 92).

43.     Once Mr. Stotler's FMLA job protection ended, his job was eliminated since existing employees were able to keep up with the work and there was no need to fill the position. (App. p. 92).

44.     Since Delavan's STD allows for a longer income replacement benefit than the leave available under the FMLA, Delavan's practice is to allow employees to remain employed,

and therefore eligible for STD benefits, even though they are no longer eligible for FMLA job protection.  (App. p. 90).

45.     On July 10, 2009 Mr. Stotler received a letter from Delavan stating that his position had been eliminated and his employment would, therefore, be terminated effective on the date he was able to return to work.  (App. pp. 22; 82-84).

46.     Although he was aware that his job was no longer available, Mr. Stotler continued to be employed because he was receiving STD benefits. (App. p. 84).

47.     On July 27, 2009 Mr. Stotler received updated work restrictions from Dr. Vittetoe.  These restrictions stated that he could not stand or walk for more than one hour at a time; he could not lift over 20 pounds; he could not squat or kneel; he was to avoid stairs and ladders; and he may use walking device as needed for ambulation.  At this point, Mr. Stotler was using a cane.  (App. pp. 23; 85).

48.     Delavan determined that work could be provided within these medical restrictions and Mr. Stotler was, at that point, considered to have been released to return to work.  (App. pp. 85-86).

49.     When Mr. Stotler called Stacy Johnson about reporting to work, Stacy Johnson told him that his position had been eliminated and he was "let go".  (App. p. 87).

50.     In a letter from Delavan dated July 31, 2009, Mr. Stotler was advised that effective upon the date he was released to return to work, August 3, 2009, his employment would be terminated.  (App. pp. 24; 88).

51.     Mr. Stotler's employment at Delavan terminated August 3, 2009.  (App. p. 93).

52.     During the time period of 2007-2009, over 45 current Delavan employees utilized FMLA, at one point or another, with some using FMLA on multiple occasions.  None of these employees suffered adverse employment action as a result.  (App. p. 93).

53.     Mr. Stotler was employed in several manufacturing jobs from 1994-2005, prior to his employment at Delavan.  (App. pp. 26-33).

54.     Mr. Stotler has no current medical problems that interfere with his ability to work. (App. p. 34).

55.     Mr. Stotler, has, since August 2009, been able to work in the type of jobs in which he has historically been employed.  (App. p. 35).

Respectfully Submitted,

WHITFIELD & EDDY, P.L.C.
317 Sixth Avenue, Suite 1200
Des Moines, IA  50309-4195
Telephone:  (515) 288-6041
Fax:  (515) 246-1474
Email:  samuelson@whitfieldlaw.com
            smith@whitfieldlaw.com

By:   _/s/ Jaki K. Samuelson_____
        Jaki K. Samuelson

By:   _/s/ Jennifer L. Smith_____
        Jennifer L. Smith

ATTORNEYS FOR DEFENDANT DELAVAN, INC.

OF COUNSEL

Tracy J. Van Steenburgh, Reg. No. 141173
NILAN JOHNSON LEWIS P.A.
400 One Financial Plaza
120 South Sixth Street
Minneapolis, Minnesota 55402
Telephone: (602) 305-7500
Fax:  (612) 305-7501
Email:  tvan@nilanjohnson.com

Original filed.

## CERTIFICATE OF SERVICE

The foregoing instrument was served upon all parties listed herein either by electronic mail as shown by the Notice of Electronic Filing through CM/ECF system or by depositing a copy thereof to each of the parties not served via electronic mail in US Mail, postage prepaid, an envelope addressed to each of the parties at their respective addresses on December 29, 2011. The undersigned declares on penalty of perjury that the foregoing is true and correct.

Thomas Werner
1441 29th Street, Suite 111
West Des Moines, IA 50266

By ____ /s/ *Jennifer L. Smith* _____